IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LEVONTAE LAWSON,<br><br>    Plaintiff,<br><br>vs.<br><br>JB **PRITZKER**, Governor,<br>State of Illinois,<br><br>ROB **JEFFREYS**, Director,<br>Illinois Department of Corrections,<br><br>CHRISTINE **BRANNON**, Warden,<br>Henry Hill Correctional Center,<br><br>DR. **JONATHAN EK**, Medical Director,<br>Henry Hill Correctional Center,<br><br>    Defendants. | Case Docket No. _____<br><br>FILED<br>APR 08 2021<br>CLERK OF THE COURT<br>U.S. DISTRICT COURT<br>CENTRAL DISTRICT OF ILLINOIS<br><br>Page 1 of 8 |

CIVIL RIGHTS ACT COMPLAINT
Title 42, Section 1983 U.S. Code

I. FEDERAL JURSDICTION:

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343(a). This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 & 2202. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this Complaint occurred in this judicial district.

II. PARTIES:

Levontae Lawson, Reg. No. Y-22595, Plaintiff.
Henry Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61402

**Defendants:**

JB Pritzker, Governor, State of Illinois, James R. Thompson Center, 100 W. Randolph St., Chicago, IL 60601.

Rob Jeffreys, Director, IDOC, 1301 Concordia Court, Springfield, IL 62794.

Christine Brannon-Dortch, Warden, Hill Corr. Center, & Jonathan Ek, Medical Director, Hill Corr. Center, 600 S. Linwood Rd., P.O. Box 1700, Galesburg, IL 61401.

(Continued)

III. PREVIOUS LAWSUITS:

None.

IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES:

Plaintiff brings this action in accordance to IDOC Local Grievance Procedures, A.D. 04.01.114. II. E. 4, which states as follows:

> "The grievance procedure SHALL NOT be utilized for complaints regarding decisions that have been rendered by the Director... ."

Accordingly, the Hill Correctional Center Grievance Officer deem this Plaintiff's Emergency Grievance #21-03-101 E, regarding the Civil Right violations as cited in this federal complaint, to be non-reviewable pursuant to Departmental Rule - 504F, Section 504.810 (B), stating "Grievane requires no additional review as all issues are outside of DR504F.

V. STATEMENT OF CLAIMS:

## COUNT I

Deliberate Indifference to Plaintiff's Health & Safety
· Failure to Trace, Track, or Test for Covid 19.

1) On March 9, 2020, Illinois Governor, JB Pritzker, issued a proclamation declaring a disaster in the State of Illinois, due to the then unknown contours of the novel Coronavirus (COVID-19) pandemic.

2) On March 13, 2020, President Trump declared a national emergency pursuant to Covid-19.

3) Then on March 20, 2020, Defendant (Def.) Governor (Gov.) Pritzker, declared all counties in Illinois as disaster areas, and ordered all Illinois residents to stay home or at their place of residence, except to facilitate certain authorized necessary activities. (See Executive Order 2020-10, at https://www.illinois.gov./Pages/Executive Orders/Excutive Order 2020-10.aspx).

4) Def. Gov. Pritzker, has, pursuant to the Illinois Constitution, at Article V, Section 8, "...the supreme executive power, and shall be responsible for the faithful execution of the laws." Gov. Pritzker has the ultimate authority for ensuring that all executive agencies, including the Department of Corrections, function in compliance with State and Federal law.

5) On March 20, 2020, IDOC Director, Rob Jeffreys (Def. Jeffreys), ordered that all State prisons be placed on lockdown/Administrative Quarantine, due to Def. Pritzker's Executive Order 2020-10, regarding the Covid-19 pandemic.

6) Plaintiff notes that LOCKDOWN of a prison is one of the most extreme security measures that the IDOC Director or a Warden, can take upon prisoners, as it equates to severe consequences (very punishing) for an inmate. Lockdown restricts what few freedoms, movement, amenities - and privileges - that an in-

(Continued)

mate may have outside his small, overcrowded, prison cell (e.g. taking a shower, going to get a haircut, exercise & recreation periods, church services, school classes, socializing with friends, or visiting with family, etc...).

7) This Plaintiff hereby states that Defendant's Pritzker, Jeffreys, Brannon, and Ek, acted with deliberate indifference to his health & safety when they each failed to implement policies or protocols to **trace, track,** or **test** for the Covid-19 virus for eight (8) months at the Hill Correctional Center, despite having the capabilities to at the least test employees who entered the facility (which is the **only** way the Covid-19 virus could be transmitted to prisoners housed therein), as such testing was available in April of 2020.

8) In fact, these named Defendants herein this claim, despite having the authority - and wherewithal - to implement tracing, tracking, and testing protocols, blantantly refused to follow the national guidelines for congregate living facilities published by the Center for Disease Control (CDC) and the Illinois Department of Public Health (IDPH), and waited until **after** an **IDOC employee died** in November 2020 (many inmates had already died) to implement any such testing protocols for prisoners and employees. (See **Exhibit "A"**, attached hereto).

9) Defendant's Pritzker, Jeffreys, Brannon, and Ek, (each) had an official and individual duty/obligation by law to, at the least, implement weekly Covid testing policies for all individual employees entering into Hill C.C., so as to protect this Plaintiff (i.e. all prisoners) form the highly contagious Cornavirus to the best of their abilities.

**Note:** All prisoner family visiting was stopped at Hill C.C. on 3/14/20, thus, said Defendants clearly knew that the only way that Covid-19 could be introduced into the facility was via an untested employee. In fact, the first evidence that such a transmission had occurred (i.e. employee to inmate) was on April 9, 2020.

10) Accordingly, this Plaintiff, on or about December 20, 2020, began having Covid-19 symptoms, however he presented with no elevated temperature.

11) The Plaintiff then attempted to be screened for his Covid symptoms by submitting multiple Sickcall Request slips (three), which were either ignored or thrown away.

12) Then in early 2021, due to the death of an IDOC employee from Covid-19, said Defendants began the implementation of an IDOC Covid-19 testing policy/protocol, ordered by Def. Jeffreys. (Inmates & Staff are now tested twice weekly).

13) This very sick Plaintiff - who was still awaiting a Sickcall Screening - was tested in early January 2021, due to the **mandated testing** as noted in the foregoing paragraphs, and the following day was advised that he had tested positive for Covid-19, after which he was placed on the Hill C.C. quarantine Wing-R1-A-Wing- for the next two weeks, during which time he remained very sick with breathing problems. He was provided medical treatment by a Nurse Practioner, however, he was not provided any medications to combat the Covid-19 virus.

14) This Plaintiff still has breathing/lung issues to date that he has not received medical treatment for.

(Continued)

15) Plaintiff further stipulates that upon initial testing for Covid-19 in early January 2021, many prisoners tested positive, who were both asymptomatic and symptomatic.

## COUNT II

Deliberate Indifference to Plaintiff's Health & Safety.
- 64' sq. ft. Cell Size with only 15' sq. ft. of open Floor Space, that is Shared by Two Inmates for 23½ hours Per Day is Unconstitutional.
- Denial of Adequate Outdoor Exercise.
- Denial of Any Meaningful Exercise.

16) On March 20, 2020, Def. Pritzker and Def. Jeffreys ordered that this Plaintiff be placed on lockdown due to the unknown contours of Covid-19 and what affects it might have on the Illinois prison system, and to help thwart the transmission of said virus.

17) Because of said "lockdown"/"Administrative Quarantine", and undoubtedly due to Defendant's Pritzker, Jeffreys, Brannon, and Ek's **FAILURE** to follow-up and adjust (or even mandate) protocols/procedures for out-of-cell time for exercise, sun light, and fresh air of said **8 month** period, this Plaintiff - has and continues to be - subjected to **CRUEL & UNUSUAL PUNISHMENT**, in that he has been kept confined to a 64' square foot cell that he shares with another inmate, wherein PHYSICAL EXERCISE (meaningful cardiovascular exercise) is UN-AVAILABLE.

18) The prison cell that this Plaintiff has been housed in was built in 1986, and was originally designed with just one bed for one prisoner per cell. In approximately 1990, due to overcrowding in IDOC, the Hill Correctional Center's prisoner population was **doubled** by then **overcrowding** a single bed cell with a bunkbed. Said prison cell has only approx. 15' square feet of open floor space for one prisoner to move around within, and only one prisoner can make use of said floor space at a time.

19) Plaintiff stipulates that he cannot exercise (i.e. workout) inside said small cell due to the very close confinement with another inmate, who does not wish to be subjected to having sweat splashed on him; or to have to smell body odor or have someone in their face breathing heavy. These are considerations and respect that must be allowed to a cellmate in all living situations at Hill Correctional Center.

20) A Hill C.C. prison cell was not designed to be used as a gym, and the layout of the cells' open floor space is not at conducive to exercise therein. Plaintiff admits that some forms of low impact exercise is available (e.g. toe touches, squats...), however, any sort of rigorous exercising in this small area can only be done with the cooperation of a cellmate, who might be accepting to such unpleasent circumstances.

21) Plaintiff hereby submits a photo of what a lived-in Hill C.C. cell looks like, so as to provide just how small & tight said cell is to move around within.
(See **Exhibit "B"**)

(Continued)

22) Plaintiff to stipulates as a fact that every two cells are linked together/connected by a shared air vent; hence, air freely flows/travels from one cell into the next, thus, supplying possible transmission of the Covid virus.

23) Plaintiff hereby stipulates that due to being kept confined inside this small cell without physical exercise/or out-of-cell movement (meaningful out-of-cell movement), that he suffered with anxiety, depression, headaches, constipation, confusion at times, and fear.

24) Plaintiff was not issued a face mask until April 25, 2020, and he was never issued any antibacterial soap or hand sanitizer at Hill C.C., and Commissary was not allowed but once every two months.

25) Plaintiff was provided very, very, limited and scattered outdoor exercise ranging from 30 minute periods once or twice per month, upto a one hour period once or twice per month. Then from October 2020 until February 2021, I had no outdoor exercise periods.

## VI. RELIEF SOUGHT:

The Plaintiff, Levontae Lawson, pro se, and with the assistance of a Prisoner at Law (PAL), brings this Civil Rights Complaint against Defendant's Gov. Pritzker, IDOC Dir. Jeffreys, Hill C.C. C.A.O Brannon-Dortch, and Hill C.C. Med. Dir. Dr. Ek, in their OFFICIAL and INDIVIDUAL capacities, and **PRAYS** that this Honorable Court will:

A) Award NOMINAL damages - to be determined by a jury - to vindicate the Plaintiff's constitutional rights that the Defendants knowingly violated.

B) Award PUNITIVE damages - to be determined by a jury - to deter unnecessary and WANTON infliction of pain and suffering caused by the Official and Individual acts that were without any penological justification, and were caused by the foregoing named Defendants.

C) Award COMPENSATORY damages - to be determined by a jury - for the intentional pain, stress, and psychological injuries inflicted upon this Plaintiff, by subjecting him to a known and preventable set of injuries and health hazards.

D) Award any other damages or relief that this Honorable Court may find that this Plaintiff may be entitled to.

## VII. JURY DEMAND:

The Plaintiff does demand that this case be tried by a jury.

(Continued)

CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury and by signing this Complaint, that I certify that all information cited herein is true and correct to the best of my knowledge and belief. I understand that if this certification is not correct, I may be subjected to sanctions by the Court including dismissal of this action.

Signed on this 29th day of March, 2021.   // *Levontae Lawson*
Levontae Lawson, Plaintiff
Reg. No. Y-22595
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61402

(Continued)



EXHIBIT "A"

Workers and inmates will be tested at pr[ison...] the rise, including Dixon Correctional Center, above.

ZBIGNIEW BZDAK/CHICAGO TRIBUNE

Page 7 of 8

# Ill. to expand prison staff testing as inmate deaths, infections surge

WED. 12-9-20

**BY CHRISTY GUTOWSKI**

As the new COVID-19 surge continues racing through Illinois prisons, with a disturbing rise in inmate deaths in November plus the state's first staff fatality, corrections officials said they will start to test all prison employees for the virus regardless of whether the workers have symptoms.

The testing will be rolled out in phases across the state, state officials said. The frequency will depend on the positivity rate of the county where the corrections facility is located but will be at least once a month, they said.

Advocates for prisoners rights, who have campaigned for more robust testing since August, are calling for a specific, expedited timeline for the testing to be implemented. They argue that the state's delays have led to avoidable infections, noting that the latest data shows that COVID-19 has infiltrated prisons across Illinois, killing at least 50 inmates since March. Half of them have died since mid-October.

In addition to the statewide testing, the Illinois Department of Corrections said that beginning this week, it will test workers and inmates every three days at three downstate prisons where infections are on the rise: two men's prisons in Dixon and Vandalia and Logan Correctional Center, a women's prison in Lincoln.

About 100 inmates and 20 staff members at Logan are positive for the virus, with many others having recovered. The testing is expected to continue until no new cases are identified for two weeks.

Similar testing will occur at other prisons when an outbreak inside the facility is identified, officials said. The rest of the state's nearly 30,000 prisoners will be tested only if they have symptoms or had a known exposure to the virus.

Lawyers and medical experts addressed the COVID-19 crisis Monday at a court hearing involving a federal consent decree related to improving health care for incarcerated men and women in Illinois.

Dr. John Raba, the court-appointed monitor who is overseeing the reconstruction of the prisons' health care system, said of the testing: "We've got to do more than just two or three sites. I think their intentions are good, but it has to be understood that this has to be rolled out very fast. I really need a timeline to better understand when will every facility have it."

Kelly Presley, the department's chief public safety legal counsel, told U.S. District Judge Jorge Alonso that officials understand the need for urgency and that IDOC will finalize its expanded staff testing plan for the remaining prisons by

*"The department does not plan on taking months to roll out surveillance testing. There certainly is an understanding this needs to happen quickly, and certainly that is the plan."*

— Kelly Presley, Illinois Department of Corrections' chief public safety legal counsel
12-8

the end of the week. She said the department has been working with infectious disease experts, including the Illinois Department of Public Health, and following guidelines from the Centers for Disease Control and Prevention.

"The department does not plan on taking months to roll out surveillance testing," she said. "There certainly is an understanding this needs to happen quickly, and certainly that is the plan."

As of Monday, more than 5,000 inmates had tested positive for the virus since March, representing nearly a fifth of the prison population. Of the 50 state prison inmates who have died related to the virus, more than 90% were considered elderly.

Nearly 2,700 staff members have also tested positive. On Nov. 6, a 64-year-old nurse who worked in Vienna Correctional Center as a contractual employee died of COVID-19-related complications.

The state's response to the spread of the coronavirus in its prisons has included suspended visitations and limiting the movement of inmates throughout facilities. In addition to personal protective equipment and sanitation efforts, prison staff are screened and there are supposed to be regular temperature checks. Staff members also must wear masks on the job, though advocates say they have heard widespread complaints from inmates that the mask rule is not always strictly followed.

The department has conducted more than 33,000 tests of inmates and staff, state data shows.

Alan Mills, executive director of the Uptown People's Law Center, said in an interview that Illinois cannot afford a further delay on expanded staff testing.

"Universal testing in New Jersey has eliminated a 'second surge' entirely," he said. "Testing works. Further delay would be immoral and would violate the constitutional rights of Illinois prisoners."

cmgutowski@chicagotribune.com

\*\*\* Chicago Tribune Article, December 9th, 2020. (Wednesday).

(Continued)

EXHIBIT "B"



Hill Correctional Center - 2021
64' sq.ft./2 Man Prison Cell

LEVONTAE LAWSON
Reg. No. Y-22595
Hill Correctional Center
P.O. Box 1700
Galesburg, IL 61402

March 31, 2021

Honorable Clerk
U.S. District Court
Rock Island Division
211 19th St., Room 203
Rock Island, IL 61201

RE: Federal Civil Rights Complaint
Filing:
<u>Lawson v. Pritzker</u>, et al.,

Dear Clerk,

Please find enclosed a Federal Civil Rights Complaint, pursuant to Section 1983, that I would like to have filed by your Office at this time.

It's my understanding that the Honorable Court will immediately order a copy of my Inmate Trust Fund Account for the past 6 months to determine whether or not I can file informa pauperis or not. Our Law Library is closed currently and I do not have access to any informa pauperis forms. So I will need to know how much of an initial partial filing fee I need to pay in filing this action. Please advise.

Thanking you in advance for your assistance in this matter.

Respectfully,

Levontae Lawson,
Plaintiff, Hill C.C.


*Levontae Lawson*
CC: File



Levontae Lawson
Reg. No. Y-22595
P.O. Box 1700
Galesburg, IL 61402

UNITED STATES DISTRICT COURT
Central District of Illinois
Rock Island Division
211 19th Street,    Room 203
Rock Island, IL
61201

(Legal Mail)

THIS CORRESPONDENCE IS FROM
AN INMATE IN THE ILLINOIS
DEPARTMENT OF CORRECTIONS